**7 P.(2d) 940**

**WOO DAK SAN v. STATE.**

**No. 3646.**

Supreme Court of New Mexico.

Dec. 3, 1931.

Rehearing Denied Jan. 19, 1932.

Alvan N. White, of Silver City, and Wm. A. Gillenwater, of Santa Fé, for plaintiff in error.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

WATSON, J.

Plaintiff in error, on conviction of murder in the first degree, was sentenced to death by hanging, the then mode of executing the death penalty. Code 1915, § 1474. Pending his appeal, the Legislature abolished this mode and adopted that by electrocution. Laws 1929, c. 69, 1929 Comp. § 35-321 et seq.

The conviction having been affirmed, State v. Woo Dak San, 35 N. M. 105, 290 P. 322, we were confronted with the statutory change above indicated, as bearing upon the disposition of the appeal and the execution of the death sentence.

We considered that the situation was controlled by Laws 1929, c. 69, § 10. We therefore remanded the cause to the district court that it might "make an order that the warden of the state penitentiary execute the judgment at a specified time, and the warden shall execute the same accordingly." To an order so made, exceptions were taken and the writ of error sued out. In granting the writ, we may have been overindulgent. However, the alien and friendless condition of the condemned man, the devoted services of his counsel, serving by appointment, the importance of the case and of the questions involved, seemed to call for the most deliberate judgment and considerate procedure at all stages.

Plaintiff in error now contends that he is not amenable to Laws 1929, c. 69, and cannot lawfully be electrocuted; that the repeal of Code 1915, § 1474, leaves no statutory mode of capital punishment effectual as to him; and, consequently, that he should be discharged. The argument runs thus: "The common law rule of practice and decision in the United States is, that where the mode of inflicting the punishment is changed, during the pendency of a prosecution, and the penalty provided by law at the time the offense is committed has been repealed with-

out a saving clause in the repealing act or a general saving clause in the constitution or statute of the state, that the defendant cannot be executed under the law nor under the old act, and must be discharged."

We agree with counsel that Laws 1929, c. 69, contains no saving clause in the sense that hanging as the mode of execution of a death sentence is sought to be preserved as to those who had committed the crime or were under sentence when Code 1915, § 1474, was repealed. As pointed out, and demonstrated by what we did, we have adopted the view that the Legislature intended that, from the taking effect of the new law, hanging should be superseded by electrocution, even as to those who were then under sentence of hanging. We see no reason to doubt the correctness of that construction.

█If such was the legislative intent, the question arises as to its power. A possible contention is that the new law would be ex post facto as applied to plaintiff in error. Counsel do not urge this, and we are content to dismiss it on the authority of Malloy v. South Carolina, 237 U. S. 180, 35 S. Ct. 507, 59 L. Ed. 905. The penalty for murder in the first degree remains as it was—death. 1929 Comp. § 35-306. The change relates only to the mode and the unsubstantial attending circumstances of inflicting it. We take judicial notice of the common understanding and belief that electrocution is more humane than hanging. Hence there is nothing in the changed mode to increase the punishment.

█ It is urged, however, that, as concerns plaintiff in error, article 4, § 34 of the Constitution blocks this legislative attempt. It provides: "No act of the legislature shall affect the right or remedy of either party or change the rules of evidence or procedure, in any pending case."

We are not greatly impressed with the force of the contention. Recalling the existing evil at which this constitutional provision is thought to have been aimed (Stockard v. Hamilton, 25 N. M. 240, 180 P. 294), it may well be doubted if it has any application to criminal cases. The rights of accused persons were guarded against legislative changes by the ex post facto provisions of the state and Federal Constitutions.

Be that as it may, we have held that article 4, § 34, does not apply to a case where, as here, a final judgment had been obtained prior to the legislative change. Stockard v. Hamilton, supra; State ex rel. State Tax Commission v. Faircloth, 34 N. M. 61, 277 P. 30.

Having thus concluded that the Legislature could and did make a new mode of execution applicable to this case, it is unnecessary to consider the remaining contentions. Plaintiff in error, of course, cannot be executed by hanging and cannot be discharged.

This brings us to the point of affirming the judgment as it now stands. Again we must decide how to dispose of the cause.

█ Laws 1929, c. 69, § 10 (1929 Comp. § 35-330), is broad enough in expression to cover

56

the case, as well as all future cases in which this court may affirm a judgment of death after expiration of the time originally appointed for execution. If it is the controlling provision, this and all future cases must be remanded after affirmances to enable the district court to perform the function of appointing a new date for execution.

For many years the practice has been otherwise. This court, by authority of 1929 Comp. § 105-2529, and its predecessors in import, has issued the warrant of execution. This section was not expressly repealed. Under familiar canons of construction, it remains in force except in so far as irreconcilable with the later act.

The later act shows on its face that a new order by the district court is not always to be required where the time of execution originally appointed has expired. 1929 Comp. §§ 35-327, 35-329. Since 1929 Comp. § 35-330 is not all-embracing, we seek a purpose and an application consistent with the continued operation of 1929 Comp. § 105-2529. The purpose we have already found: To convert unexecuted judgments of death to be executed by hanging into judgments of death to be executed by electrocution. The application has already been made in this case. Plaintiff in error now occupies the status of one upon whom had been originally pronounced a sentence of electrocution.

By nothing said in State v. Woo Dak San, 35 N. M. 105, 290 P. 322, was it intended, at least by the present writer or by the Chief Justice, to countenance a view that 1929 Comp. § 105-2529 had been repealed as to capital cases.

■ Another question was raised by exception in the court below. It is not here urged. Yet, in fairness to those charged with the responsibility for executions, it should be decided. The "warden" of the state penitentiary and of the state prison are frequently referred to in the chapter here in question. As an official title, the word "warden" is unknown to the laws of this state.

Not having been used as a title of office, the word must have been used in a generic sense. Among the common synonyms are "chief officer"; "keeper"; "chief or principal keeper." Funk & Wagnalls St. Dict., Cent. Dict., Bouvier's Law Dict. Undoubtedly the statutory duties imposed upon the superintendent of the penitentiary make him its chief officer and keeper. 1929 Comp. § 130-101 et seq.

We take judicial notice of the fact that it is common parlance in this state to refer to the superintendent as "warden," and that, except in official dealings, he is seldom otherwise designated.

In the title and body of this act, the Legislature has used the common and a generically correct, rather than the technical and official, designation. As to its intent, there can be no reasonable doubt. The superintendent of the penitentiary is the "warden" of that institution within the meaning of the act.

Orders or warrants therein required to be directed to the "warden" should be directed to the superintendent, or, if directed to the "warden," should be honored by the superintendent.

Having found no error in the original judgment or in the subsequent proceedings, it remains for this court to direct execution of the sentence pronounced and for the superintendent of the penitentiary to execute it. The date of execution will be appointed by order in due course. It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.

PARKER, J. (dissenting).

I am in accord with the other members of the court upon all of the propositions stated in the opinion save one, which I regard as vital. The question is whether this court still has power since the passage of chapter 69, Laws 1929, to fix the day for the execution of the death sentence by electrocution, or whether the district court of the county in which the conviction has been had must perform that duty. The court holds that this court still has the power under former legislation to fix the day for the execution of the death penalty. I think that, after the Legislature passed chapter 69, Laws 1929, which is a complete system in itself for fixing the date of the execution of the death penalty and for inflicting the death penalty by electrocution, the district court must fix this date. Of course, this involves a repeal of statutes by implication, which is not favored, but, when the former statute is inconsistent with a later one, as in this case, and where the later statute furnishes a complete system in itself providing for all the details of inflicting the death penalty, it necessarily repeals the former statute, as the two cannot stand together. It is for this reason that I dissent from the opinion of the court.