**8**

2002-NMCA-108

57 P.3d 862

NEW MEXICO MINING COMMISSION, and New Mexico Energy, Minerals and Natural Resources Department, Mining and Minerals Division, Petitioners–Appellees,

v.

UNITED NUCLEAR CORPORATION, Respondent–Appellant.

Nos. 21,288, 21,290.

Court of Appeals of New Mexico.

Sept. 9, 2002.

Certiorari Denied, No. 27,722, Nov. 4, 2002.

Patricia A. Madrid, Attorney General, Daniel Rubin, Patrick T. Simpson, Special Assistant Attorneys General, Ted Apodaca, Special Assistant Attorney General, Energy, Minerals and Natural Resources Department, Santa Fe, NM, for Appellees.

Jon J. Indall, Stephen J. Lauer, Sharon W. Horndeski, Comeau, Maldegen, Templeman & Indall, LLP, Santa Fe, NM, Dalva L. Moellenberg, Gallagher & Kennedy, P.A., Phoenix, AZ, for Appellant.

*OPINION*

ALARID, Judge.

{1} This case concerns three sites where Respondent, United Nuclear Corporation (UNC), mined uranium in the 1970s and 1980s. In 1995, the Mining and Minerals Division (MMD) issued notices of violation to UNC based on UNC's failure to timely submit a "site assessment," NMSA 1978, § 69–36–5(A) (1993), and a "permit application," NMSA 1978, § 69–36–11(A) (1993), for each of the three sites, which MMD had designated as "existing mining operation[s]," NMSA 1978, § 69–36–3(E) (1993). The Mining Commission (the Commission) affirmed the notices of violation, and UNC sought review of the Commission's order in the district court pursuant to NMSA 1978, § 69–36–16(C) (1999) and Rule 1–074 NMRA 2000.

{2} In the district court, UNC argued that uranium ore is not a "mineral" under the definition of mineral set out in the Mining Act, NMSA 1978, §§ 69–36–1 to –20 (1993, as amended through 2001). UNC pointed out that the definition of mineral in the Mining Act expressly excludes any "commodities . . . that are regulated by the nuclear regulatory commission." Section 69–36–3(G). UNC argued that the Nuclear Regulatory Commission (NRC) regulated the uranium ore produced at the three sites, and, therefore the uranium ore produced at the mines was not a mineral within the meaning of the Mining Act. Since "an existing mining operation" is defined by the Mining Act as "an extraction operation that produced marketable *minerals*," Section 69–36–3(E), UNC argued that the sites were not existing mining operations because uranium ore, the only commodity

produced at the sites, was specifically excluded from the definition of mineral. Thus, according to UNC, the three sites were not subject to regulation as existing mining operations. The district court accepted UNC's reasoning, ruling that the only commodity that was mined at these mines was uranium ore, which is specifically excluded from regulation by the Mining Act. The district court ordered that the three notices of violation be dismissed.

{3} MMD, joined by the Commission, sought review by a petition for certiorari. We granted the petition, and for the reasons set forth below, we reverse.

## DISCUSSION

### Jurisdiction

{4} UNC has moved to dismiss this appeal on the ground that Article IV, Section 34 of the New Mexico Constitution precludes application of NMSA 1978, § 39–3–1.1 (1998) and Rule 12–505 NMRA 2000 to this case. UNC's argument is disposed of by our decision in *Hyden v. N.M. Human Servs. Dep't*, 2000–NMCA–002, 128 N.M. 423, 993 P.2d 740. As *Hyden* recognizes, a case must be pending *in the tribunal that will be affected by the rule change* for Article IV, Section 34 to apply. The changes in *appellate* procedure implemented by Section 39–3–1.1 and Rule 12–505 became effective while this case was pending in the *district* court. Consequently, under *Hyden*, Article IV, Section 34 does not preclude us from applying Section 39–3–1.1 to this appeal.

{5} Alternatively, we note that NMSA 1978, § 39–3–2 (1917, as amended through 1966) confers on this Court appellate jurisdiction to review final orders entered "in any civil action in the district court." The Commission and MMD's petition for a writ of certiorari was filed in the district court within thirty days from the date of the district court's decision, Rule 12–201(A)(2) NMRA 2000, and its contents substantially satisfied the requirement of a notice of appeal, Rule 12–202(B) NMRA 2000. Thus, assuming, solely for purposes of argument, that we are precluded from applying Section 39–3–1.1, we nevertheless would have jurisdiction pursuant to Section 39–3–2.

### Merits

■ {6} This appeal turns upon the question of whether the uranium ore produced at the three sites was a "mineral." To the extent we are presented with a question of statutory construction of the Mining Act, we apply the deferential standard of review set forth in *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995). To the extent we review federal statutes and regulations, we conduct a non-deferential de novo review. *See Hennessy v. Duryea*, 1998–NMCA–036, ¶ 7, 124 N.M. 754, 955 P.2d 683.

{7} The Mining Act defines a mineral as:

a nonliving commodity that is extracted from the earth for use or conversion into a saleable or usable product, *but does not include . . . commodities, byproduct materials and wastes that are regulated by the nuclear regulatory commission or waste regulated under Subtitle C of the federal Resource Conservation and Recovery Act.*

Section 69–36–3(G) (emphasis added). UNC argues that the uranium ore produced at the three sites cannot be a mineral under this definition because uranium ore is a "commodit[y] . . . regulated by the nuclear regulatory commission."

{8} The NRC regulates "source material,"[1] which includes uranium and uranium ore, by requiring a license in order to lawfully engage in certain activities with respect to source material. Section 62 of the Atomic Energy Act, now codified at 42 U.S.C. § 2092 (1992), provides as follows:

Unless authorized by a general or specific license issued by the Commission, . . . no person may transfer or receive in interstate commerce, transfer, deliver, receive possession of or title to, or import into or export from the United States any source material after removal from its place of deposit in nature, <u>except that licenses shall not be required for quantities of source</u>

---

1. "Source material" is a regulatory term of art and refers to:

   (1) Uranium or thorium, or any combination thereof, in any physical or chemical form or (2) ores which contain by weight one-twentieth

of one percent (0.05%) or more of: (i) Uranium, (ii) thorium or (iii) any combination thereof.

10 C.F.R. § 40.4 (2002).

material which, in the opinion of the Commission, are unimportant.

(Emphasis added).

{9} In 1961, the Atomic Energy Commission, the predecessor to the NRC, exercised its statutory authority under the underlined portion of 42 U.S.C. § 2092 quoted above by promulgating the following regulation:

§ 40.13   Unimportant quantities of source material.

. . . .

(b) Any person is exempt from the regulations in this part [10 C.F.R. part 40] and from the requirements for a license set forth in section 62 of the Act [42 U.S.C. § 2092] to the extent that such person receives, possesses, uses, or transfers unrefined and unprocessed ore containing source material; provided, that, except as authorized in a specific license, such person shall not refine or process such ore.

10 C.F.R. § 40.13(b) (2002). Consistent with this regulation, the Atomic Energy Commission and the NRC have never regulated conventional uranium mining.[2] Charles H. Montange, *Federal Nuclear Waste Disposal*, 27 Nat. Resources J. 309, 331 (1987). "[T]he act of mining uranium ore is not regulated, and licensing requirements become applicable only when some 'processing' of the ore begins." 5 *American Law of Mining* § 177.02[1] (2d ed. Cheryl Outerbridge, Editor–in–Chief). UNC has not cited, and we have not found, any reported instance of the NRC requiring a license to engage in conventional mining of uranium ore. Our review of federal law satisfies us that neither the unre-

fined and unprocessed ore produced at the three sites nor UNC's activities with respect to unrefined and unprocessed uranium ore were regulated by the NRC.

{10} Turning to the Mining Act, we note that Section 69–36–3(G) defines "mineral" as a "commodity that is *extracted from the earth.*" The commodity that UNC "extracted from the earth" at the three sites was unrefined and unprocessed uranium ore, a substance that is not regulated by the NRC. The fact that subsequent to its extraction from the earth, uranium ore may be converted into products that are subject to NRC regulation does not alter the fact that uranium ore at the time of its extraction from the earth is not a commodity that is regulated by the NRC. We hold that uranium ore, at the time of its extraction from the earth by conventional mining techniques, is not regulated by the NRC within the meaning of the Mining Act and therefore meets the statutory definition of mineral—"a nonliving commodity that is extracted from the earth for use or conversion into a saleable or usable product." Section 69–36–3(G).

**CONCLUSION**

{11} We reverse the district court and reinstate the decision of the Mining Commission upholding the notices of violation.

{12} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CYNTHIA A. FRY, Judges.

---

2. Conventional mining of uranium ore involves excavating the unrefined and unprocessed ore from underground or open pit mines. 5 *American Law of Mining* § 177.01[2][a] (2d ed. Cheryl Outerbridge, Editor–in–Chief). Another process, *in situ* extraction, involves the injection of water or an acid leaching solution into the uranium ore deposit to dissolve the uranium. 5 *American*

*Law of Mining, supra,* at § 177.01[2][b]. Unlike conventional mining, *in situ* mining combines extraction of the ore with processing; consequently, a license may be required to engage in *in situ* mining. 5 *American Law of Mining, supra,* at § 177.02[2]. UNC does not argue that it extracted ore at the three sites other than by conventional mining.